Thank you very much, Your Honor. I'm Paul Bland, representing Mr. Aguayo in this case. With the Court's permission, I'm going to start off on the issue of the idea that because the bank voluntarily imposed this obligation on themselves, there's no preemption. I think that that issue, by itself... In a case like this, I think this is one of the few I've ever been involved in, but why don't you just, in 30 seconds, tell us what, you know, just very objectively, tell us what the case is about. It's a class action lawsuit against U.S. Bank. Go ahead, Forrest. Yes, sir. Mr. Aguayo had his car repossessed, and he got a notice from the bank that set out some information about it. Under California law, he alleges, there's this California state statute, the Reese Levering Act, that requires that if a car is repossessed, that notice has to contain a variety of information that lets the person know precisely what they have to do in order to redeem or to reinstate the loan, or how the car is going to be sold so they can tell if it's a fair sale. And the California Supreme Court has said that if the party that repossesses a car doesn't give all of the notices that are required under this act, then they can't get a deficiency judgment. So that when they go to court and they raise their state court argument that says, you still owe us money after we repossessed the car, we took your car, we sold it, you still owe us money, we want a deficiency judgment, they can't get that unless their notice was appropriate. And here they did not provide, we allege, a number of pieces of information that are required by that act. So what was missing from the notice that's required by Reese Levering? It did not provide the precise information on what Mr. Aguayo would have had to pay in order to reinstate or redeem the car. And, for example, there's several different components that pop up in these cases where someone will show up, they only have a few days, they have 15 days to try and come to the consumer and try and get their car back. They have 15 days from the point of receiving the notice, receipt of the notice, to the point of sale. Right. To the point at which they're able to act. And they need to show up with a check. And usually these people have to take a cab because their car has been repossessed. And if they don't have the precise amount, what happens is they're turned away and the car gets sold. So let me understand. I want to understand the concept of self-help repossession as a practical matter. How does that work? Does the bank have a key to the car? How does it work? No, the bank comes generally and it would be the same thing as stealing a car generally. They come and they let themselves into the car. Sometimes they have a car, sometimes they go in through the window and can start a car. Who's they, though? It's not they. The bank hires an agent who goes out, a repossession company, a repossessor. And then they add a fee for that that they charge the consumer. So the consumer who's defaulted, knows he's defaulted, goes out to get his car one day, the car's missing. Right. And then he gets this notice. Right. And that tells him that the bank has his car and is going to sell it. And that he's got this many days that he's got to pay. And it's supposed to set out exactly, here's what you have to pay and to whom. So if one thing that happens is frequently the car is law enforcement gets involved and has a separate fee. And if the consumer doesn't know that they need to go and pay $45 to the police department and they just show up at the lot where the car is being held someplace in a dirt lot under the highway. And they show up with the check for the bank, then they won't be given the car because they don't have a stamp certificate from law enforcement. It's one of the things. A proper notice. And it's very easy to do this. The vast majority of cars that are repossessed in California have all the notices that you're supposed to have. But tell them the dollar figure that they need to pay to the bank, the dollar figure they need to pay to law enforcement, where they go, and so forth. And this notice did not include that information. And the towing company. Right. Yeah. Well, so that's what I don't understand. I mean, is the difficulty with U.S. Bank complying with California law that every state has its own set of requirements in this circumstance? So you'd have to have a different form? There's some differences from state to state. And the bank knows that. I mean, their form that there was a notice form had across the top of the form a line that says this is the California notice of repossession form. And, in fact, they substantially complied with California's notice requirements, didn't they? They complied with some of California's notice requirements. For example, at the bottom of their form, they have a box that has language that's exactly from this letter. But they didn't comply with – I mean, we've never gotten a chance yet to prove our case on the merits, our allegations, that they did not comply with essential elements of it. That will be an issue for another day down the road, perhaps. I certainly hope so. But they did not provide the exact payoff information. It certainly suggests they were aware of California's requirements because of the similarity. I believe that's exactly right, Your Honor. I mean, the Reese-Levering Act says it has magic language that's supposed to be in the box in a certain size font. And at the bottom of that form, which is on page 45 of the record, they have the language that's taken exactly from the form. So during the time that they were actually engaged in the business transactions that we're talking about, they behaved as if they had to follow California law. And it makes sense also because they had – they signed a – they were assigned a contract. They acquired a contract, bought rights under a contract, which was issued by the car dealer, which said if we repossess your car, we will give you all the notices that are required by law. Yes. See, I don't find that argument as persuasive as your preemption argument because it doesn't say which law. Well, the – And it could be – it could be the law that they're contending is – preempts Reese-Levering. But the – but you look at – in looking at the – at what the contract means – I mean, first let's talk about the contract – what the contract itself means. You look at the time that the contract was entered, Your Honor, to determine what the contract means. This contract was not originated by the bank. The bank did not come in and make the loan contract. The car dealer made the loan contract. So when the car dealer in California has a contract that says we – if we repossess your car, we will give you all the notices required by law, and then the governing law provision says that this contract is governed by federal and state law, when the car dealer enters that contract, what else could it mean that they are going to follow California's laws? The car dealer doesn't have any preemption claims. At the time this contract was made by Star Ford, the only meaning that that language could have, we will follow all required laws when we repossess your car, is that they were saying that they were going to follow California law, which includes the Reese-Levering Act. And California's Uniform Commercial Code specifically says we incorporate for car repossessions the Reese-Levering Act into this – into the Uniform Commercial Code. So that's what it meant at the time that the car dealer entered the contract. Now, in the Supreme Court's case, the Wallin's case, they said, there's a big difference for preemption purposes between laws that are imposed upon an actor by the state and laws that are self-imposed by an actor by contract. And they said that if by contract a party enters into a contract where you have agreed to follow a state law, even if it would otherwise be preempted, then you have – there is no longer a preemption claim. In the Wallin's case, there's no doubt whatsoever that Illinois law was preempted by the Aviation Act, the Airline Act. But because they had signed a contract in which they said we will follow the state law here, the Supreme Court said that those claims were not preempted and allowed them to go forward. Well, does the contract mention anywhere California law or the Reese-Levering Act? It says on page 48 under applicable law, federal law and California law apply to this contract. It doesn't mention the statute by name, but does reference generically California state law. That's right. And also, Your Honor, there is no federal law that deals with the repossession of vehicles. The Office of Comptroller of Currency, which regulates things, the OCC, has reams of all sorts of great things. I'm sorry. You referenced something on page 48. For some reason, I don't have page 48. What is that? It's a page of the retail installment contract. And paragraph 6 of it is labeled applicable law. And what does it say? And it says federal law and California law apply to this contract. Okay. So that's the car dealer. That's the sale contract. The retail installment contract says California law will apply. Can you talk to me about the case from my home state, Northern District of Ohio, the Crespo case? Yes. What do you do about Crespo? Well, first of all, the Crespo case is a case involving the Office of Thrift Supervision. The OTS has field preemption. The Office of Comptroller of Currency does not. There's a very different regime. Under the Office of Comptroller of Currency's rules ---- Do you believe Crespo was accurately decided or properly decided under the facts of that case, or are you going to distinguish it? I'm going to distinguish it. So you're saying it was rightly decided in ---- I personally actually think that it probably was not correctly decided. I think that the issue of the contract argument was not made effectively whatsoever. I think that the Wolins issue was sort of missed by the parties, which I think has happened in a number of these cases. But even if it was properly decided, which I actually think that our argument that they voluntarily agreed to do this would wipe that out, the Office of Thrift Supervision, one thing, they don't have a savings clause that deals with debt collection, which the Office of Comptroller of Currency does. And the Office of Thrift Supervision's preemption has always been broader. It arose out of when the OTS was first created was when the federal government had taken over all these savings and loans in the end of the 1980s. And so the federal government was suddenly on the hook for whatever liabilities they had. So they wiped away all sorts of state consumer protection laws in order to allow ---- in order to sort of keep down the budgetary impact. But they've always had a completely different regime. And there are several different decisions that we cited that distinguish Office of Thrift Supervision cases from OCC-related cases. But the OCC has no rules that regulate repossession of cars or what notice has to be given. They regulate everything about credit card transactions, about checking accounts, about all sorts of ---- there are all sorts of rules about when you create a credit relationship, what you have to follow. But what they're talking about is striking away California's Re-Slavery Act and all these state laws that deal with repossession. And what are they going to replace them with? There is no OCC rule to fit in that gap. When it says California and federal law will govern the notices that are provided, the only rule that can exist there is California. Now, what they've ended up saying is, well, we agree that we have to follow the UCC. So they are agreeing that some state laws govern. But their position is essentially, we're going to pick which state laws we're going to cover. So we will follow the part of the UCC that lets us repossess the car, and we're going to follow the part of the UCC that if you cross out the parts of California's UCC that name the Re-Slavery Act, that allow us to sue for a deficiency judgment. But we choose not to follow the parts of state law that would require us to actually follow the rules. You think that's somehow unfair that they could pick and choose which ones to follow? Well, it's not only unfair, but it's just completely made up. I mean, there's nothing in the rules of the Office of Control of Currency that says that the bank can only follow those state laws which favor it. Can I have you address this question, please? Are the terms notice and disclosure, those two words, interchangeable as used to describe a re-slavering notice and the regulations use of the term disclosure? Those two words appear in the regulations and the statute. And do I treat them the same or are they different? Well, the terms disclosure in the Office of Control of Currency's regulations, you know, we cited a Supreme Court case that says the words First, can you answer the question? Okay. Are they the same or are they different? And then explain your answer. The word notice in general is a species of disclosure. I agree with that. What's the ordinary meaning of both of the terms? I mean, I think that a notice is a type of disclosure. You can start with that. It provides information to people and a notice generally is a disclosure. But how are they defined in the dictionary, the ordinary meaning in the dictionary definitions? I think that a notice is an official... Do you know? Are you making this up as you go along? I don't have a dictionary definition. Right. I mean, isn't that important when we're interpreting the plain meaning of statutes? Well, Your Honor, that's — there's no doubt that if the only thing that was there was the word disclosure, that the notice under Reese-Levering is a type of disclosure. The argument that we are making is that the OCC regulation that deals with disclosure is found in a section of the regulation that is entirely dealing with disclosures relating to the creation of the credit relationship. It is not dealing with anything that deals with debt collection. They have a savings clause that says debt collection laws are different from other rules. There's a U.S. Supreme Court case that Justice Breyer wrote, the Atherton case, that says for more than 100 years debt collection has been different. Debt collection is one area that's governed by state law. The OCC itself has never attempted to regulate debt collection. So when you look at the word disclosure that says, well, we preempt all state laws dealing with disclosure, look at where the word disclosure is found in the OCC's regulations, and where it is found is in a long list of rules about the creation of the credit relationship, and that that's quite different. If I can, I'll hold the last 40 seconds. Thank you. Thank you. Can you address at the outset, you purchased a contract, do you get to choose what parts of it you want to follow or not? Don't you buy the entire contract? And that entire contract included following California state law? Let me say good morning to the panel before I answer your question. Judges are welcome to California. We did buy a contract. The contract said that if and when the car was repossessed and we were going to sell it in an attempt to collect a deficiency, that we would provide notices required by law, as Judge Wardlaw indicated. The contract separately had a choice of law provision that said federal law in California will apply. But it doesn't, it nowhere says that lease levering is the statute that's going to apply. What other statute or law are we talking about here? That would be one California law that would apply. It would be one California law had, for example. Are you saying that the failure to specifically identify that statute means that it doesn't apply? I do. I do say that. The contract was meant to be assigned. Mr. Aguayo was told on the middle of ER 47, page ER 47, he separately signed a provision that said we're going to assign this contract. It said look on the next page of the contract. It tells you, it says if we can't assign this in a couple of days, we're going to rescind the deal. We are not a bank. We don't loan money. We are simply writing this commercial paper. Provisions such as notice provisions are deliberately left vague like that because you don't know where this contract is going to go. Everybody in the transaction knows that it's going somewhere, and nobody can say that they didn't know it was going to go somewhere. Counsel, where do you get, where does the bank get it? From what does the bank derive its right to repossess the car? It has a security interest in the commercial paper. The car. No, it gets its right to repossess the car under the Rees-Levering Act in California. The bank, the national bank, does not derive its right to take back its security interest under Rees-Levering. That's a contract-based right. It is not from the Rees-Levering Act. Are you sure about that? Because the Rees-Levering Act cover, do you know much about the origins of the common law right to repossession and how it was developed and incorporated into Rees-Levering? Your Honor, I won't profess to be an expert. I'm saying, I'm suggesting that maybe you don't really derive your right from banking law. You derive your right from the Rees-Levering Act. I would respectfully disagree that a national bank, Your Honor, it may be, and again, I don't have those historical origins, but a national bank's right to take back its collateral I do not believe derives from state law. How do you explain the fact that your notice provision, one might even argue, substantially complied with the California State Act? I mean, the language seems to parrot it in part. Isn't that an acknowledgment by you that you were trying, perhaps at least, to follow the state law? There's no question but that the notices were similar, and we would argue ultimately did comply with California law. And by the way, as an aside, Mr. Bland's discussions about what the allegations of the complaint are, are all news to us because this is, as you know, the complaint has a single paragraph that says, did not comply. The manner in which it didn't comply was something we've never been informed of. Corporate organizations do not run their compliance departments on the theory that maybe someday we'll win a preemption fight over this. And there's no question that the bank was putting out a form that they hoped that they wouldn't get sued over. That does not mean that when they do get sued over it, that they don't have the right to defend themselves on the grounds of federal preemption, which they've done here. And as alluding to, I guess, your chief judge's decision in PRESVO, and I realize that we're here on de novo review, but it's worth noting that we've had four different Article III judges over a two-and-a-half-year span have addressed this exact question. Are you including Perez from the Northern District? Judge Coe's decision. Yeah, but that decision was just relying on the district court decision here, basically. Well, I would disagree with that. I think that Judge Coe carefully went through it. I think I just read it, and she also, she relied heavily on Aguayo, and she also said she doesn't know how Aguayo will turn out. And she offered to let the parties stay in the case, which they turned until they lost, they turned the dam. But I don't think that's a fair reading of Judge Coe's opinion. I think she went through it very carefully. I think she was guided by Aguayo. But the fact that she agreed with Aguayo doesn't mean that she gave it any less attention. I think she went through it quite carefully. Well, let me ask you this. Did Starr Ford, they're here in Glendale. Glendale's this way. I'll take your word for it, Your Honor. Glendale's this way. It's this way. You pass it when you go to the airport. When Starr Ford sold this vehicle to Mr. Aguayo, I mean, it had a relationship with U.S. Bank, did it not? I assume so, Your Honor. Well, sure. I mean, that's the way we do business. I assume that it was one of the vendors. They knew at the time that this contract would be sold to U.S. Bank. And U.S. Bank was in the business of buying these contracts, right? Yes, sir. That's how they got in trouble. Isn't that right? Well, that's why they got sued. Do they still exist in the same form? U.S. Bank? Yes. Oh, yeah. U.S. Bank is one of the largest banks in the country. Who took them over? Nobody. But U.S. Bank stands alone. It's the fifth largest retail bank in the country. So they're used to doing this. I'm glad they're standing alone. I pass by them, and maybe I'll make a deposit there someday. I'm sure they would appreciate that, Your Honor. And U.S. Bank had a whole setup with repossessors and the police and all the rest of them. So they were really in this business of buying this paper and then making sure they got paid off. And what was the interest rate here? I don't know, Your Honor. Let me pull up the contract. Your Honor, on ER-46, the retail installment sale contract indicates that the annual percentage rate was 8.20 percent. What? 8.2 percent? 8.2 percent, yes, sir. And if the purchaser was late on payments, did the percentage go up? I don't think so, Your Honor. I don't know that. You don't know? No. And can I ask you a follow-up question? Of course. With reference to Starr Ford, should you be in a different position than Starr Ford, from whom you bought this contract? We're not. We are in the same position. The contract said. If Starr Ford were here, you'd be advocating or endorsing the same arguments. Well, Starr Ford would be subject to a contract that said, we will give you notice required by law. And what is required by law might depend on who holds the paper. Well, wait a minute. So if the bank turned the paper back to Starr Ford, did the bank have the right to do that? I don't think so, Your Honor. I don't think Starr Ford was. I don't know. You know, I'd buy cars and I'd say, check here, sign here, sign here. Where's my car, you know? Where do I check in? But you don't know that. No, I don't. One way or another. But that's a good question. If Starr Ford is required to follow California law, why shouldn't the bank be required to do that? They take their rights from the contract. Does the contract say that when it comes to repossession that it doesn't say what law applies to U.S. Bank, does it? It does not, Your Honor. Well, it says federal and California law apply. But as to the particular issue here, it says notice required by law, which opens the question of what is required by law. And a law that is preempted by the National Bank Act. All right. So now we're finally, after 10 minutes into your argument, going to get to preemption. Okay. So which type of preemption are you arguing? Express. Express preemption. All right. And what provision of the banking law do you rely on for express preemption? The OCC's regulation at 12 CFR 7.4008. It governs disclosures. D2. Right. It's shorthand. The disclosure provision, yes. Okay. And specifically you're relying on the language that the district court did, the other credit-related documents? Well, yes, in part. But the regulation does not limit itself to credit-related documents. Right. But I'm trying to focus on what specifically is your argument. Are you in line with the district court, or do you think the district court? I think the district court got it absolutely right. I think there are other grounds on which the district court could be affirmed. I think this is a credit-related document. It is. And the first thing that Mr. Bland said was that this is a notice that informs the borrower of their rights with respect to reinstating the contract. That is, do you want to continue the credit relationship? Let me just focus on this. So your whole argument boils down to whether you characterize the notice provisions required under Reese-Levering as disclosure provisions. Disclosure provisions, yes. So it all comes down to that. Correct. Okay. So if, suppose we were to agree with you that those provisions were disclosure provisions, do we strike down the whole Reese-Levering Act as being preempted? I mean, is there anything in your briefs or anything about severability? Because Lucy Coe, a district court judge, Lucy Coe, who, by the way, I know very well and just had dinner with last week, she was striking down a lot more than just those notice provisions. The only provision under which U.S. Bank is being sued is the provision for the failure to allegedly give appropriate post-repossession pre-sale notice. So you're saying that's the only portion of this whole regulation of the relationship regarding the purchase of the car. The only provision that the banking regulations preempts is those two sections of the notice. Your Honor, I'm defending a piece of litigation that has only that provision, that issue. I am not purporting to tell you what other provisions. Well, the counsel, you know, this is what's so frustrating about you so far. You can't, there's so much you can't answer. And when we have to decide this case, we can't just decide it with these two provisions in mind. And we have to look at the consequences for the entire act, for the, you know, for everything else that flows from this. And so it would be helpful if you had it answered. Well, I'm sorry. I wasn't addressing provisions of the statute that are not at issue in the litigation. It is our position that the statutes at issue in the litigation are preempted as applied to a national bank, as applied to a national bank. It seems as though you're picking and choosing amongst provisions because the, at least my view is this is the act which gives you the right to repossess that appears in the contract. In fact, the language in the contract about repossession also incorporates the very same law that derived from the common law, is that you can do self-help repossession as long as you don't break the peace. That's the, that came from the common law. It was incorporated into lease levering, and which is what you did when you used self-help to repossess the car. Your Honor, I'm obviously doing my very best to answer your questions, and I'm sorry. Let me go at this a different way. The bank has only been sued for violation of a particular provision of lease levering, and we have defended ourselves in the district court and here before the court on the grounds that that provision is preempted. And I don't, there could be lots of other provisions of lease levering that apply. I simply, they weren't at issue in the case, and I'm certainly not trying to avoid your question. I'd be delighted to attempt to discuss any other provisions. They just haven't come up, and they're not in the record. They haven't been ruled upon. Can I have you address the following? For your preemption argument to succeed, we would have to equate debt collection with credit related, as those terms are used. True? I don't think that's true, Your Honor. Following the Crespo case? I don't think that I understand your question. I don't think that, I think debt collection is a separate activity that the court does not need to reach, and I think that the vast majority, half of their arguments, I'm sorry, they have two species of arguments. Let me try this with you then. Is the post-repossession notice, is that lending related? Is that loan related? It is loan related, Your Honor. It is loan related. And your authority for that would be just what? The regulation, the statute itself, if I may. Yeah, let me take you to 74008D2. They have several examples in there. The regulation of the statute. I was going to go to lease levering briefly. No, I'm going to go to what you cited earlier and talk about the examples that are set forth in that section. They have specific examples, none of which are debt related. Isn't that true? And doesn't that suggest that debt related is something different than credit related? Every loan, Your Honor, creates a debt. I think we can agree. So to some extent, all of these are going to overlap. There's no right. So the Truth in Lending Act, for example, which talks about disclosures that you owe a loan, under the way they're looking at this, could be characterized as a debt collection statute, which we know it's not. But it gives rise to a loan for which somebody owes someone else a debt. What the regulation refers to is debt collection, which I don't think this is. What lease levering says is that everybody in California, after your car is repossessed, shall be entitled, except in limited circumstances, to reinstate the contract. That is, to continue doing business with the lender. And that is a credit related document. A national bank might very well prefer to take its collateral, sell it, and attempt to collect a deficiency judgment than to continue to underwrite a loan to Mr. Aguayo, for example. And that deals with either the continuation or the final culmination, if they redeem, of a lending relationship. There's no debt collection. In my view, and I think Judge Koh, getting back to my point about that I don't think she necessarily followed Aguayo right down the line, I think that she addresses this in a sort of a particularly sophisticated manner. She says, these kind of overlap, but this is much more like a lending activity than it is a debt collection activity. Does that answer your question, Judge Ahart? Repossession? Is that more a debt collection or a lending activity? I think that seizing the secured property is part of the lending relationship, particularly if you've got a state statute. But the question is what the state statute does. If you've got a state statute that says you've got to give them an opportunity to get the car back and to reinstate the contract and to continue to do business with you rather than collecting the balance of the loan. Let me just ask you a question. You do understand I'm giving you the opportunity to answer the things that are in my mind before I have to go roll on this thing. But isn't what's really at stake is U.S. Bank's right to collect the deficiency? Because under the statutory scheme, if notice requirements aren't complied with, then the bank has no right to collect the deficiency. So doesn't that – I mean, to me, it just strikes me that that takes it out of a debt because what you want is to be able to collect the deficiency. That's what the bank wants. You just said that. No, I don't think there's any question, and that's what the lawsuit is about, is whether the bank can get repaid the monies that it's owed. And that's the penalty for failure to comply with these notice requirements is that you don't have the right to collect that deficiency. Under – yes, if California law applies, that is how the – there's no question that that is how the California statute operates. So in deciding whether this is debt collection or debt creation, that would have to weigh into our understanding of that. The – yes, Your Honor, it would certainly have to weigh into your understanding. I don't disagree with that. I believe I'm over my time if I'm reading this. But, see, what bothers me about this is this whole system of repossession. If you just file an ordinary lawsuit against this plaintiff, then you would get the marshal to go out and serve a writ of attachment, right? Yes, sir. You wouldn't have these strong-armed guys going out there in the middle of the night, maybe breaking a window, scaring people, and driving off with a car. They know how to get into cars, and they know how to start them. And then the matter would then fall into the jurisdiction of the state courts. And it would be a little less drastic than the procedure that's followed now of just sending people out there and grabbing the car, driving it off, putting it in a police – they put it in a police lot. They don't put it in a police lot. I mean, the tow-away companies come in. They make money. They add another, what, a few hundred dollars or so to tow the car away, and then you've met with all these fees and everything else. So that's why it's important to give this person a list of all the expenses that they have to come up with if they want to get their car back and reinstate their payments. I mean, this is debt collection. It's strong-armed debt collection. Your Honor, I appreciate that. May I make two points? The repossession, to be clear, and I know there were questions to Mr. Bline about this. The repossession is not an issue. Nobody has ever complained about the repossession. The repossession was perfectly lawful. Second, we believe we did provide them with the fees, and Judge Ward will ask Mr. Bline to identify what exactly was missing because we think the notice was inadequate. Well, the California statute gives you the right to repossess, lets you go out there. Is that right? Yes, sir. So then you should follow California law when it makes that balance on what the debtor's rights are. Let me clarify because I think I just answered your question inconsistently with Judge Ward's last question earlier. I don't think that the bank derives its right to foreclose on its security property from California law, not the national act. I know that I'm substantial. What did he say? He said a national bank does not derive its authority to collect on a securitized loan. I missed that. Tell me what you said. I do not believe, as I answered, and I want to make sure, I think I gave you an inconsistent answer. I do not think a national bank's right to realize on it or to foreclose upon its secure property is dependent upon California law. Okay. So what statutory authority do you derive that from? Again, I don't, as Your Honor apparently has the historical background on this, I think that it is part and parcel of the National Bank Act, 24-7, the ability to loan money on, to make non-real estate loans or loans secured by personal property. Well, you know, I've done, when I was at the district court, we did foreclosures and we had to follow California foreclosure law, and there's quite a technical thing that national banks had to follow. In real property, Your Honor? Right. Yeah, and that I believe is correct, but we're not dealing with real property. So you think there's a separate? The authority for national banks to make real estate loans derives from a separate provision of the National Bank Act. It's not from 24-7. It is a more recent historical derivation, and it is governed by a different OCC regulation at 12 CFR 34. What federal statute allows the national bank here to send repossessors into the property? 12 CFR, excuse me, 12 U.S.C. 24-7 authorizes national banks to make loans secured, I'm sorry, Your Honor, 12 U.S.C. 24-7 authorizes national banks to make loans secured by personal property or property other than real estate. Yeah, but what is there in the national, in the statute that author, I mean, yeah, that's okay, that's fine, but then if there's a default in payment or if the contract is breached or if the money is owing, then they go into court and file a complaint and get rid of attachment, and the marshal goes out here and attaches this, or the sheriff does if it's in county territory. But what authorizes the national bank to go out and send repossessors on the property, break into the car and take it away? Your Honor, I'm not aware of any specific federal authority that authorizes that detail of activity by the national bank. But again, the repossession is not an issue. Well, it's authorized by the California Commercial Code. Well. That's Section 9609. That's the authority you're going under. Under the Uniform Commercial Code, Your Honor. Well, California's enacted version of it, which includes re-slivering. Well, that's not entirely accurate, Your Honor, as to a national bank. Well, only because of your preemption argument. The, by, there's actually, that's true, but there's sort of two sub points to be made. The statute itself says that it does not make applicable any law that is not otherwise applicable. That's what the UCC specifically says in reference to re-slivering. Second, we know from the OCC itself that a non-uniform UCC, which a UCC that incorporated a California statute like re-slivering would necessarily be, that would be non-uniform, is not applicable to a national bank. It would only be the uniform provisions of the UCC that would apply to a national bank under the OCC interpretive letter that we've cited and provided in the appendix to our brief. Yeah, I read that letter. It didn't seem so much on point. But California Commercial Code Section 9609, Secured Parties' Right to Take Possession After Default, specifically provides for your actions here that you can, after default, while a secured party may do both of the following, one, take possession of the collateral, and then you can take possession of the collateral either pursuant to judicial process or without judicial process if it proceeds without breach of the peace. And that's what you're doing here, right? Yes, Your Honor, and I'm sorry we didn't have 9609. I'm not familiar with the statute, so I think that is the answer to the question. But again, that's the UCC. That's not re-slivering. And the UCC's requirements are different from re-slivering. Well, actually, they're identical in California. Well, I don't think that's accurate. On this point, on auto repossession. On the repossession, but nobody's challenging the repossession. People are only challenging the post-repossession notice. Okay. Yeah, but when you, you know, I know you say that, but the fact that the repossession, the way it's carried out, is authorized by California law, and that's the process that's followed, I think that that's a factor that ought to be considered in deciding a preemption issue. The UCC, Your Honor, has, the OCC has indicated that the UCC, the uniform provisions of the UCC apply. We have argued, and we think that the district court correctly decided, that re-slivering, which is not the UCC, does not apply. Re-slivering is not a uniform statute that applies nationwide. It is a very particularized California statute, and we think that it is preempted by the National Bank Act and the OCC regulations. But I think that's still a factor we can think about when the decision on preemption is made. You started your argument with good morning back in Ohio. It's afternoon now, so maybe I can say good afternoon, Mr. McGuire. I'm obviously substantially over my time. Can I answer any other questions for the panel? Well, that's all right. You know, this is an important case. No, I understand. We're not coming in in the middle of the night and giving you a little time. We don't know how long these cases are going to take. We don't set these times. The clerk's office does. But do you have another question, Your Honor? No, I'm good. Another question? No. Thank you very much. Okay. Thank you. The one thing I'd like to zero in on is when the question was asked, do you stand in a different place from Starr Ford, the answer was, well, what the contract requires depends on who is holding the note at the time of repossession. Now, that violates every rule of assignment law. When you take the bundle of rights and responsibilities, you take them all. It does, but if you accept the preemption, I think it really comes down to the preemption argument. If you accept the preemption argument, then you would have to agree with U.S. Bank. If you accept their argument that as to certain actions by a national bank under the Banking Act, that you wouldn't take everything lock, stock, and barrel if, in fact, it's preempted. And he's relying on express preemption. I think that, you know, to be fair, if he's right, then the Bank wouldn't necessarily be required to take that. So, Bill, that's why I say it comes down to the preemption argument. I definitely agree it comes down to preemption argument. And if we don't really need to address the contract argument, do we, once we decide the preemption argument? Well, I think of the contract argument as being a preemption argument because it's an argument that says that parties, that when you have a contract in which you've agreed to do something, like at the bottom of page 49, you have a notice that says, basically, we will stand, that if we sell this note to someone else, they will stand in the exact same shoes as us. Because I think what you don't get is that if Congress has expressly preempted this area, then Congress has spoken on that, and that's part of the group of laws that apply. Well, Your Honor, Congress sets a floor. But if the bank had wanted to go out and sign a contract that says, we will give you all kinds of additional notices and spelled them all out, they would have the right to do that, and nothing in the National Bank Act prevents them from offering to give greater notices. And just because what they did was they incorporated these requirements on themselves through reference to a statute, doesn't change. They still have agreed to meet that. And what the Supreme Court has said, that in preemption, in the preemption area, anything that you voluntarily undertake on yourself is not imposed by the State. Preemption is about where the State is forcing you to do something. And for this argument, you're relying entirely on the American Airlines case? We actually cite quite a few cases like that. The Wells v. Chevy Chase case from Maryland, it was a case involving the Office of Thrift Supervision. Maryland had this very detailed rule about credit cards and the notices that had to be given. Absolutely clear it was preempted by the Office of Thrift Supervision Regulations. But because the bank specifically said in its contract, we will follow Maryland law, the Court says when you have agreed to do that, it's no longer something that's imposed on you by the State. It's something you imposed on yourself. Then it's different. And in the Waters case that was just decided last year, excuse me now, two years ago, the Supreme Court said the contracts that are made by national banks are governed by State law. I mean, contract law is still something that's governed by State law. You can go out and undertake all sorts of agreements that the State can't force you to agree. So it is a preemption argument. I'm not trying to debate the terms of the contract because I'm trying to win the merits later. I think this goes to the preemption issue. But, I mean, we would be extremely, extremely grateful and happy if we're able to win on the idea that this is debt collection and not debt creation. I think that that is, I think that savings clause is exactly right. I think the district court completely misunderstood what a savings clause is. But I do also think that in this case that the contract argument, that they're basically saying that assignment law all goes out the window, that the National Bank Act lets us come in and just because of who we are rewrites the contract. There's nothing in the OCC rules that say that. All right. Thank you, counsel. Thank you. The matter will stand submitted.
judges: Zouhary, Pregerson, Wardlaw